# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
HELEN FUREY,                                              )
                                                         )
                    Plaintiff,                           )
                                                         )
        v.                                               )          Civil Action No. 17-1851 (ABJ)
                                                         )
STEVEN T. MNUCHIN,                                       )
*Secretary, U.S. Department of Treasury*,                )
                                                         )
                    Defendant.                           )
_____)

## MEMORANDUM OPINION

This case arises out of plaintiff Helen Furey's termination from her employment as an

Information Technology ("IT") Specialist at the United States Department of Treasury. Plaintiff

claims that the agency violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and

the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), when it subjected

her to a hostile work environment; discriminated against her based on her race, national origin,

and age; and retaliated against her for engaging in protected activity under both statutes. Compl.

[Dkt. # 1] ¶¶ 84–115. The Merit Systems Protection Board ("MSPB" or "Board") upheld the

agency's decision to remove plaintiff from her position, and plaintiff is also challenging that

determination as arbitrary and capricious under 5 U.S.C. § 4303. *Id.* ¶¶ 116–19.

Defendant has moved for summary judgment on all counts, Def.'s Mot. for Summ. J. or,

Alternatively, Partial Mot. to Dismiss [Dkt. # 13] ("Def.'s Mot."); Mem. in Supp. of Def.'s Mot.

[Dkt. # 13] ("Def.'s Mem."), and plaintiff has opposed the motion. Pl.'s Mem. of P. & A. in Opp.

to Def.'s Mot. [Dkt. # 15] ("Pl.'s Opp.").[1]  Plaintiff has not pointed to any evidence to show that defendant's justification for firing her – namely, unacceptable work performance – was a mere pretext for discrimination based on age, race, or national origin, or in retaliation for complaining about the allegedly unlawful treatment.  Further, the Court sees no reason to overturn the MSPB's determination to uphold plaintiff's removal since the Administrative Judge's decision was supported by substantial evidence and had a rational basis in the law.  Therefore, the Court will grant defendant's motion for summary judgment.

## BACKGROUND

### I.     Factual Background[2]

Plaintiff identifies herself as a fifty-year old Asian woman of Chinese national origin.  Compl. ¶ 16.  She began working for the Department of Treasury on January 31, 2010 as an IT Specialist in the Department Offices Operations division of the Office of the Chief Information

---

1       Defendant also filed a reply brief.  *See* Reply in Further Supp. of Def.'s Mot. [Dkt. # 16] ("Def.'s Reply").

2       The parties did not respond to each other's statements of fact.  This failure could permit the Court to treat the factual assertions as undisputed.  *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may: . . . consider the fact undisputed for purposes of the motion."); LCvR 7(h)(1).  For purposes of this opinion, though, any citations to the parties' statements of fact indicate that the Court has found the fact to be either undisputed based on the factual statements put forward by both parties, or independently supported by the evidence cited by the party.  Further, where the parties failed to address some relevant facts contained in the record, the Court has cited directly to the record evidence.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Officer. Statement of Facts and Genuine Issues [Dkt. # 15] ("Pl.'s SOF") ¶ 2; Administrative

Record [Dkt. # 17-1] ("AR") at 64.[3]

For the rating period beginning on October 1, 2012 and ending on September 30, 2013,

plaintiff received satisfactory reviews based on her performance plan. Pl.'s SOF ¶ 3; *see* AR at

86–97, Ex. A to Def.'s Mot. [Dkt. # 13-2] (together, "FY2013 Performance Appraisal"). Although

her supervisor, Chakravarthy Susarla, rated her as "fully successful"[4] on most elements, he

observed that "it was not very clear if [plaintiff] had [a] complete understanding and ownership of

the systems" for which she was responsible. FY2013 Performance Appraisal at 10. Further,

---

[3]     In support of her factual statements, plaintiff cites to the Initial Appeal File ("IAF") from the MSPB proceedings. She consolidated relevant excerpts of the IAF in one large 680-page Administrative Record ("AR") submitted to the Court as an "Appendix" to the record, *see* [Dkt. # 17-1], but instead of then citing to the page numbers in the Administrative Record, plaintiff directed the Court to the page numbers of the IAF. This made reviewing cited portions of the record unnecessarily difficult, and in the end, the Court found it much more efficient to cite to the corresponding pagination in the Administrative Record. However, even the Administrative Record was not simply paginated as pages 1 through 680. Because plaintiff accounted for the missing pages from the IAF, there are large gaps in the pagination, and the Administrative Record starts on page 31 and ends on page 1220. Therefore, the Court's citations to the Administrative Record will be based on the page number on the bottom right hand corner of each page.

The Court notes that plaintiff's failure to individually identify the critical exhibits in the record is consistent with her failure to appreciate the proper standard of review in this case. Although Count 9, plaintiff's challenge to the MSPB decision, is based on the Administrative Record, all of her employment claims must be reviewed *de novo* and according to binding D.C. Circuit precedent. *See Butler v. West*, 164 F.3d 634, 639 n.10 (D.C. Cir. 1999), quoting 5 U.S.C. § 7703(c). Yet, plaintiff does not marshal the exhibits that in her view would defeat summary judgment, and her brief is based primarily on prior MSPB decisions that do not bear on this Court's legal analysis. Even the few cites to district or Circuit court cases tend to be to non-binding authority from other districts or Circuits. *See, e.g.*, Pl.'s Opp. at 24, 31 (citing to Merit Systems Protection Board cases for how to make out a prima facie case of discrimination and retaliation); *id.* at 32 (citing Southern District of New York, Fourth Circuit, and Eleventh Circuit cases to support her argument that defendant deviated from its regular practices).

[4]     There are four possible ratings an employee can receive: Outstanding; Exceeded; Fully Successful; and Unacceptable. Plaintiff "exceeded" in three critical elements (Critical Elements 2, 3, and 9), and was "fully successful" in the other six (Critical Elements 1, 4, 5, 6, 7, and 8). FY2013 Performance Appraisal at 2–8.

Susarla observed that plaintiff "worked at a task level instead of working at the project level and needed guidance and direction to make progress." *Id.*

In August 2013, plaintiff was put on a detail as an IT Specialist (Applications Software) in the Office of the Chief Information Officer, ACIO Enterprise Business Solutions ("EBS"), Enterprise Content Management ("ECM"), and her position description remained the same. Pl.'s SOF ¶¶ 4–5; AR at 65–71 ("IT Specialist (Applications Software) Job Description"). She became one of at least four project managers in that department. Pl.'s SOF ¶ 6; *see* AR 106, 109–10 (mentioning Bill Marcinko, Sean Fox, and Camille Smith as other project managers). At that time, her supervisor was James Graham, an IT Program Manager, and her second-level supervisor was again Chakravarthy Susarla, Director of Applications, ECM and Web Solutions. Def.'s Statement of Material Facts [Dkt. # 13-1] ("Def.'s SOF") ¶ 4; Pl.'s SOF ¶¶ 7–8; EEO Investigative Aff. of James Graham, AR at 380–408 ("Graham EEO Aff.") ¶ 3 (identifying himself as "Helen Furey's Supervisor" and describing the chain of command); EEO Investigative Aff. of Chakravarthy Susarla, AR 410–14 ("Susarla EEO Aff.") ¶ 4 (describing how plaintiff "reported to Mr. James Graham, and Mr. Graham has reported to [him]").

While she was on this detail, plaintiff was given a new performance plan that included many of the same critical elements as the previous plan. *See* Def.'s SOF ¶¶ 6–7; Pl.'s SOF ¶ 5; *see* AR 73–85, Ex. B to Def.'s Mot. [Dkt. # 13-3] (together, "FY2014 Performance Plan"); *see also* IT Specialist (Applications Software) Job Description. The critical elements relevant to this case, for which plaintiff was later rated at an unacceptable level, are Critical Element # 1, Communication (written and oral); Critical Element # 4, Technical Competency; Critical Element # 5, Expand Shared Service Offerings; and Critical Element # 6, Improve, Support and Maintain OCIO/EBS Program Operations. *See* FY2014 Performance Plan. The performance plan

detailed the prerequisites necessary to achieve certain ratings. *See id.* Plaintiff received the new plan on March 11, 2014, and she "reviewed and discussed the performance requirements with" her supervisor. Pl.'s SOF ¶ 5; *see* FY2014 Performance Plan at 11.

While supervising plaintiff, Graham noticed deficiencies in her work product. Decl. of James Graham, AR at 1071–88 ("Graham Decl.") ¶ 27. For example, plaintiff was not submitting required project status reports or following standard project management practices, and other employees had complained to Graham about plaintiff's ineffective performance as a project manager. *Id.* ¶¶ 27–30; *see also* AR at 103–13, Ex. C to Def.'s Opp. [Dkt. # 13-4] (together, "Notice of Unacceptable Performance") at 1. As a result, Graham removed her as a project manager from one of her assignments and replaced her with someone else. Graham Decl. ¶ 30; Notice of Unacceptable Performance at 1. And on June 11, 2014, Graham met with plaintiff for her mid-year review and relayed his concerns about her deficient performance in several critical elements. Graham Decl. ¶ 32; Notice of Unacceptable Performance at 1.

According to Graham, plaintiff continued to exhibit the same fundamental deficiencies of not managing her projects adequately and failing to "escalat[e] risks" despite his best efforts at counseling her. Graham Decl. ¶ 33. So, on August 27, 2014, Graham sent plaintiff a notice informing her that she had been performing at an unacceptable level with regard to multiple critical elements in her performance plan. Def.'s SOF ¶ 8; Pl.'s SOF ¶ 16; *see* Notice of Unacceptable Performance. He then placed plaintiff on a 90-day Performance Improvement Plan ("PIP").[5] Def.'s SOF ¶ 8; Pl.'s SOF ¶ 16; *see* Notice of Unacceptable Performance. The notice outlined

---

[5] The PIP ended on December 22, 2014, 117 days after it started, because the agency gave plaintiff and Graham extra time to work together since plaintiff used leave during the PIP period. *See* Ex. O to Def.'s Mot. [Dkt. # 13-16] ("MSPB Decision") at 5 n.2.

various projects plaintiff needed to complete, as well as how to complete those projects satisfactorily in order to improve her performance and receive, at least, "fully successful" reviews at the end of her PIP period. *See* Notice of Unacceptable Performance at 4–10. It also warned plaintiff that "failure to demonstrate acceptable performance in any critical element *will result in* . . . reduction-in-grade, reassignment or removal from the [a]gency." *Id.* at 1 (emphasis added).

Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor on approximately September 22, 2014, alleging that Graham discriminated against her on the basis of her age, race, sex, and national origin by placing her on the PIP. Def.'s SOF ¶ 9; Pl.'s SOF ¶ 22;[6] Ex D. to Def.'s Mot. [Dkt. # 13-5] ("EEO Counselor Report") at 1. And plaintiff sent the EEO counselor an informal complaint making the same allegations in early October. Def.'s SOF ¶ 11; *see* Ex. E to Def.'s Mot. [Dkt. # 13-6]. The counselor spoke with Graham about plaintiff's allegations on October 8, 2014, *see* Def.'s SOF ¶ 10; Pl.'s SOF ¶ 23; *see* EEO Counselor Report at 3, and on the same day, Graham emailed Susarla and Debra Vess, one of Graham's supervisors, about it. *See* Pl.'s SOF ¶¶ 23–24; AR at 882.

On October 21, 2014, plaintiff filed a formal EEO complaint with the Department of Treasury alleging that the agency "discriminated against [her] on the basis of [her] age, race, and national origin." Def.'s SOF ¶ 13; Pl.'s SOF ¶ 25; *see* Ex. F to Def.'s Mot. [Dkt. # 13-7] ("Formal EEO Complaint"). The agency accepted plaintiff's formal complaint for investigation on November 3, 2014. Def.'s SOF ¶ 14; *see* Ex. G to Def.'s Mot. [Dkt. # 13-8]. Graham submitted

---

6    Plaintiff does not cite to any record evidence to prove that she complained to an EEO counselor on September 22, 2014. However, the EEO Counselor's report supports this fact, and plaintiff averred that this was true in her declaration. *See* Decl. of Helen Furey, Ex. 1 to Pl.'s Opp. [Dkt. # 15-1] ("Furey Decl.") ¶ 22. A declaration may be used to oppose a motion as long as it is made on personal knowledge, sets out facts that would be admissible evidence, and shows that the declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).

his initial affidavit to the EEO investigator on December 12, 2014. Pl.'s SOF ¶ 26; *see* Graham EEO Aff.

Plaintiff received her performance appraisal for the 2014 fiscal year on December 22, 2014, and the review specified that plaintiff did not successfully complete the PIP. Def.'s SOF ¶ 15; *see* Ex. H to Def.'s Mot. [Dkt. # 13-9] ("FY2014 Performance Appraisal"). On January 15, 2015, Graham emailed plaintiff to inform her that she was no longer eligible for the telework program because her performance was not at the "fully successful" level, and she did not pass her PIP. Def.'s SOF ¶ 16; *see* Ex. I to Def.'s Mot. [Dkt. # 13-10].

On February 2, 2015, plaintiff amended her EEO complaint to add a claim alleging that her supervisors, Graham and Susarla, retaliated against her by giving her an unsatisfactory performance evaluation and removing her from telework because she had engaged in protected EEO activity. Def.'s SOF ¶ 17; Pl.'s SOF ¶ 27; *see* Ex. J to Def.'s Mot. [Dkt. # 13-11] ("Letter of Acceptance"). Graham submitted a supplemental affidavit as part of the EEO investigation on March 23, 2015, Pl.'s SOF ¶ 28; *see* Suppl. EEO Investigative Aff. of James Graham, AR 442–53 ("Graham Suppl. EEO Aff."), and Susarla also provided one but the date she submitted it is unknown. Pl.'s SOF ¶ 28; *see* Susarla EEO Aff.

On March 23, 2015, Graham issued a Notice of Proposed Removal to plaintiff informing her that he was recommending her removal from her position for unsuccessful performance in five critical elements during the improvement period. Def.'s SOF ¶ 18; Pl.'s SOF ¶ 32; *see* AR at 114–27, Ex. K to Def.'s Mot. [Dkt. # 13-12] (together, "Notice of Proposed Removal"). The Notice of Proposed Removal named Susarla as the deciding official in the matter, and it stated that plaintiff had fourteen days to reply to the notice orally or in writing. Notice of Proposed Removal at 11. Plaintiff submitted a written and oral response to the notice in mid-April, Pl.'s SOF ¶¶ 49–50; *see*

AR 204–09.  She also provided additional information after she was notified that she could respond to the supplemental information Graham had submitted.  Pl.'s SOF ¶¶ 51–52; *see* AR at 303–10.

On June 29, 2015, Susarla issued the decision to terminate plaintiff from her position.  Def.'s SOF ¶ 19; Pl.'s SOF ¶ 53; *see* AR 315–23, Ex. L to Def.'s Mot. [Dkt. # 13-13] (together, "Decision to Remove").  Susarla concluded that plaintiff's removal was warranted "because [her] performance during the improvement period in two Core Competency Critical Elements and two Performance Commitment Critical Elements was unacceptable."  Decision to Remove at 1.  A few days later, the agency issued a Standard Form 50 removing plaintiff from her position effective June 29, 2015. Pl.'s SOF ¶ 54; AR at 72.

## II.     Procedural Background

On July 16, 2015, plaintiff appealed her removal to the Merit Systems Protection Board ("MSPB") under the Civil Service Reform Act of 1978 ("CSRA").  *See* Def.'s SOF ¶ 20; Ex. M to Def.'s Mot. [Dkt. # 13-14] ("MSPB Appeal"); *see also* 5 U.S.C. §§ 4303(e), 7701, 7702(a).  The filing was a "mixed case appeal," which is an appeal filed with the MSPB "that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national original, disability, age, or genetic information."  29 C.F.R. § 1614.302(a)(2); *see also* 5 C.F.R. §§ 1201.151–1201.175; 5 U.S.C. §§ 4303(e), 7701, 7702(a).  If an employee chooses to file a mixed case appeal, the Board "shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701."  5 U.S.C. § 7702(a).

In her appeal, plaintiff denied that her performance was deficient, and she claimed that "her performance standards were not valid and not communicated to her; the PIP did not provide her with a reasonable opportunity to improve; the PIP tasks were not related to the critical elements of

her performance plan; and her removal was discriminatory on the basis of age, race and national origin as well as retaliatory because of her prior EEO activity." MSPB Decision at 6; *see also* MSPB Appeal at 6.

Before the Board, the employer must demonstrate that its reasons for firing the employee based on unacceptable performance are supported by substantial evidence. 5 U.S.C. § 7701(c)(1)(A). Further, an agency's action cannot be sustained if the employee shows that the decision was based on any prohibited personnel action, which includes unlawful discrimination and retaliation. 5 U.S.C. §§ 2302(b)(1), (8)–(9).

An Administrative Judge upheld the agency's action on February 2, 2017. Def.'s SOF ¶ 22; *see* MSPB Decision; 5 U.S.C. § 4303; 5 C.F.R. §§ 432.104–06. The judge found that the agency had proven by substantial evidence that it had established performance standards for plaintiff's position, that they had been communicated to her, and that the PIP requirements reflected those performance standards. MSPB Decision at 9–10. The judge also concluded that plaintiff had a reasonable opportunity to improve, rejecting plaintiff's argument that she was deprived of the necessary opportunity because she was on a detail with a new performance plan. *Id.* at 12–23. As to plaintiff's affirmative defenses, the judge determined that plaintiff's removal was not "motivated, even in part," on the basis of "age, race, or national origin rather than her well-documented poor performance," and that plaintiff had not demonstrated any inference of retaliation. *Id.* at 27, 29.

Pursuant to 5 U.S.C. § 7702(b)(1), plaintiff petitioned the Equal Employment Opportunity Commission ("EEOC") to consider the Board's final decision with regard to the employment discrimination and retaliation claims, and the EEOC concurred with the Board's determination. Def.'s SOF ¶ 23; *see* Ex. P to Def.'s Mot. [Dkt. # 13-15]. At that point, the MSPB's decision

became judicially reviewable, 5 U.S.C. § 7702(b)(5)(A), and plaintiff had the right to bring all of her causes of action to the district court. *Id.* § 7702(e)(3); *id.* § 7703(c).

On September 8, 2017, plaintiff filed a nine-count complaint in this Court. *See generally* Compl.

- Count 1: Title VII – National Origin Discrimination – Disparate Treatment

- Count 2: Title VII – National Origin Discrimination – Hostile Work Environment

- Count 3: Title VII – Race Discrimination – Disparate Treatment

- Count 4: Title VII – Race Discrimination – Hostile Work Environment

- Count 5: Title VII – Retaliation

- Count 6: ADEA – Age Discrimination – Disparate Treatment

- Count 7: ADEA – Age Discrimination – Hostile Work Environment

- Count 8: ADEA – Retaliation

- Count 9: 5 U.S.C. § 4303 – Wrongful Termination

Compl. ¶¶ 84–115.

Plaintiff claims that she was terminated because of her race, national origin, and age, and that she was fired in retaliation for making EEO complaints. Compl. ¶¶ 84–115. She also alleges that she was wrongfully terminated under 5 U.S.C. § 4303, and she seeks review of part of the MSPB's decision upholding her termination. *Id.* ¶¶ 116–19.

Defendant moved for summary judgment on all counts. With respect to Counts 2, 4, and 7, the hostile work environment claims, defendant asserted that plaintiff had failed to exhaust her administrative remedies. Def.'s Mem. at 6–8. In response, plaintiff stated that she "is not contesting [d]efendant's argument with respect to her claims of hostile work environment or any unexhausted claims."[7] Pl.'s Opp. at 2 n.1. And she makes no arguments in her opposition about

---

[7] The Court notes that there is no evidence in the record that would defeat defendant's motion for summary judgment on exhaustion grounds. Plaintiff has not alleged – nor submitted any evidence that would show – that she complied with the necessary steps to exhaust her administrative remedies under Title VII or the ADEA for her hostile work environment claims. Both Title VII and the ADEA require a person complaining of a violation to file an administrative charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (requiring a Title VII plaintiff to file a charge with the EEOC either 180 or 300 days after the alleged unlawful employment practice occurred); 29 U.S.C. § 633a(d) ("When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action."); *see also* 29 C.F.R. § 1614.105(a) (under EEOC regulations, aggrieved person must consult with a counselor prior to filing a formal complaint for discrimination based on "race, color, religion, sex, national origin, age, disability, or genetic information"); 29 C.F.R. § 1614.106 (outlining what must be included in a formal EEOC complaint, including a "sufficiently precise" statement "to describe generally the action(s) or practice(s) that form the basis of the complaint"). Although plaintiff filed an administrative charge on October 21, 2014, *see* Formal EEO Complaint, it did not express or even hint at a hostile work environment claim based on national origin, race, or age. *Id.* at 3 ("I believe that the Agency has discriminated against me on the basis of my age, race, and national origin."). And when she amended the complaint to add retaliation claims against her supervisors, she did not include any reference to a hostile work environment. *See* Letter of Acceptance. Therefore, she did not exhaust her hostile work environment claims. *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (holding that the plaintiff did not exhaust her hostile work environment claim because she did complain about it in her administrative charge with the EEOC).

Further, when plaintiff brought her mixed case appeal to the MSPB, she did not complain about a hostile work environment. MSPB Appeal at 6 ("Appellant's removal from service is the product of unlawful discrimination on the basis of age, race, and national origin, as well as reprisal for engaging in protected activity."). So, she did not exhaust her administrative remedies through that channel either. *See Butler*, 164 F.3d at 639 n.6 ("[W]hen a federal employee claims he or she has been affected by both an 'adverse employment action' and a related Title VII violation, administrative remedies may be exhausted for Title VII purposes by asserting both claims before the MSPB."), quoting *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998).

a hostile work environment.[8]  *See id.*  Therefore, the Court will grant defendant's motion for summary judgment on Counts 2, 4, and 7.[9]  As to the remaining Title VII and ADEA counts, the Court will also grant defendant's motion since plaintiff has failed to come forward with sufficient evidence to show that defendant's reasons for terminating her were a mere pretext for discrimination based on her national origin, race, or age, or in retaliation for making EEO complaints.  And the Court will grant summary judgment in favor of defendant on Count 9 since the Administrative Judge's decision was not arbitrary or capricious.

## STANDARD OF REVIEW

Plaintiff's complaint arises out of a mixed case appeal she brought to the MSPB.  That appeal not only challenged an adverse employment action taken – her termination – but it also claimed that the action was taken, in whole or in part, because of discrimination and retaliation prohibited by Title VII and the ADEA.  *See Perry v. Merit Sys. Protection Bd.*, 137 S. Ct. 1975, 1980 (2017) (describing a "mixed case"); *see also Butler*, 164 F.3d at 638.  "Although [MSPB] decisions are generally reviewed by the Court of Appeals for the Federal Circuit, 'mixed cases'

---

8       Plaintiff insists that her hostile work environment "claims can still be considered by the Court as background evidence."  Pl.'s Opp. at 2 n.1, citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that Title VII does not bar an employee from using prior acts as background evidence in support of a timely claim filed with the EEOC, but also concluding that all independently discriminatory acts and charges addressing those acts must be timely filed).  It is somewhat unclear what plaintiff means by this statement.  In her opposition brief, plaintiff refers to certain instances when she was allegedly treated differently from her colleagues, and she tries to characterize these events as additional "adverse actions" in support of her Title VII and ADEA disparate treatment claims.  *See id.* at 25–30.  But as discussed later in this opinion, plaintiff cannot use the evidence she planned to use to support her hostile work environment claims now to make new allegations of adverse actions in the hopes of supporting her disparate treatment claims.

9       In the alternative, defendant moved to dismiss plaintiff's hostile work environment claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Def.'s Mot. at 1; Def.'s Mem. at 2.  Because plaintiff does not contest that those claims have not been exhausted, the Court does not need to address the sufficiency of the claims.

that involve both MSPB appeals and discrimination claims . . . are reviewed in federal district court . . . ." *Vickers v. Powell*, 493 F.3d 186, 192 (D.C. Cir. 2007). However, the district court applies different standards of review to each claim. As the D.C. Circuit has explained:

> On the discrimination claim, the complainant "shall have the right to have the facts subject to trial de novo by the reviewing court." The district court reviews nondiscrimination claims on the administrative record, and will set aside the MSPB's determination only when "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "obtained without procedures required by law, rule or regulation having been followed"; or "unsupported by substantial evidence."

*Butler*, 164 F.3d at 639 n.10, quoting 5 U.S.C. § 7703(c).

Therefore, plaintiff's discrimination and retaliation claims are to be evaluated under the familiar summary judgment standard. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment

motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

In evaluating plaintiff's last claim, which relates to the MSPB's decision upholding her removal, the Court "review[s] the MSPB's assessment deferentially, upsetting it only if it was arbitrary and capricious or an abuse of discretion, or if it was unsupported by substantial evidence." *Fogg v. Ashcroft*, 254 F.3d 103, 112 (D.C. Cir. 2001), citing 5 U.S.C. § 7703(c).

## ANALYSIS

**I.    The Court will grant defendant's motion for summary judgment on plaintiff's disparate treatment claims under Title VII and the ADEA.**

Title VII makes it unlawful for an employer, including the federal government, to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1); *id.* § 2000e-16(a) (stating that "[a]ll personnel actions affecting employees or applicants for employment" in the federal government "shall be made free from discrimination based on race, color, religion, sex, or national origin.").  The federal sector provision of the ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  To make out an employment discrimination case under either statute, the plaintiff must show that she (i) suffered

an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin, or her age. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).[10]

Plaintiff points to no direct evidence of discriminatory animus in this case. When a plaintiff brings a disparate treatment claim under Title VII or the ADEA and relies on circumstantial evidence to establish the employer's unlawful conduct – as plaintiff does here – the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (ADEA); *Vickers*, 493 F.3d at 194 (Title VII); *see also Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006) (noting that "the Supreme Court set out a burden-shifting approach [in *McDonnell Douglas*] to employment discrimination claims in cases where the plaintiff lacks direct evidence of discrimination").

---

10    Even though Title VII and the ADEA both use the phrase "because of," Title VII jurisprudence permits a plaintiff to prove that a protected characteristic was a "motivating factor" for the adverse action. 42 U.S.C. § 2000e-2(m); *see Ginger v. District of Columbia*, 527 F.3d 1340, 1345 (D.C. Cir. 2008) (explaining the difference between "single-motive" and "mixed-motive" disparate treatment cases under Title VII). By contrast, a plaintiff bringing a disparate treatment claim under the ADEA "must prove by a preponderance of the evidence . . . that age was the 'but for' cause of the challenged employer decision" because the ADEA "does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174, 177–78 (2009). Despite these differences, courts often analyze disparate treatment claims under Title VII and the ADEA together, especially where the plaintiff is not bringing a "mixed-motive" case. *See DeJesus v. WP Co.*, 841 F.3d 527, 532 (D.C. Cir. 2016) (describing the differences between the statutes but using the same burden shifting framework to analyze the plaintiff's disparate treatment claims); *Barnett v. PA Consulting Grp.*, 715 F.3d 354, 358 (D.C. Cir. 2013) ("We consider [the plaintiff's] age and sex discrimination claims in the same way we analyze Title VII claims."); *see also Koch v. White*, 251 F. Supp. 3d 162, 177 (D.D.C. 2017). Despite the one sentence in the retaliation section of her opposition where plaintiff cites to a MSPB decision using the "motivating factor" standard, *see* Pl.'s Opp. at 31, plaintiff has not asserted, or provided the Court with any reason to conclude that she is bringing anything other than a single-motive case here. So, the Court finds it appropriate to analyze the disparate treatment claims together.

Under that framework, the plaintiff bears the initial burden of establishing a prima facie case.[11] *McDonnell Douglas*, 411 U.S. at 802; *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010) (ADEA); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (Title VII). Once a prima facie case is established, then "[t]he burden . . . must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 804; *Ford*, 629 F.3d at 201; *Holcomb*, 433 F.3d at 896. If a legitimate, nondiscriminatory reason is given, the burden shifts back to the plaintiff to prove that the proffered reason is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Ford*; 629 F.3d at 201; *Holcomb*, 433 F.3d at 896.

But in cases like this one where the defendant proffers legitimate, non-discriminatory reasons for the challenged action, the court need not conduct the threshold inquiry into whether the plaintiff established a *prima facie* case of discrimination. Instead, the court is required to analyze whether the defendant's asserted reason is in fact a legitimate, non-discriminatory explanation or whether it is simply a pretext for discrimination. *Brady*, 520 F.3d at 494 ("Lest there be any lingering uncertainty, we state the rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas.*") (emphasis in original).

---

11      To establish a prima facie case of disparate treatment discrimination, "the plaintiff must establish that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination." *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002), citing *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). "In the ADEA context a complainant makes his required *prima facie* showing if he (i) belongs to the protected group, (ii) was qualified for the position, (iii) was terminated and (iv) was replaced by a younger person." *Paquin v. Fed. Nat'l Mortg. Ass'n*, 119 F.3d 23, 26 (D.C. Cir. 1997).

Once the defendant has proffered a legitimate explanation, the burden shifts to the plaintiff to demonstrate why the defendant is not entitled to judgment as a matter of law. In the context of a disparate treatment claim, the plaintiff may defeat summary judgment by proving that the defendant's legitimate, non-discriminatory reason is a pretext for discrimination, *McDonnell Douglas*, 411 U.S. at 804. At this juncture, plaintiff bears the burden of persuasion. *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003), citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000); *Ford*, 629 F.3d at 201.

A plaintiff can demonstrate that the employer's explanation for his discharge was pretextual by providing evidence from which a reasonable jury could find that the employer's proffered, lawful reasons for acting are "unworthy of credence." *Reeves*, 530 U.S. at 143, quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Showing pretext, though, "requires more than simply criticizing the employer's decisionmaking process." *Hairston v. Vance–Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014). It is not sufficient to "show that a reason given for a job action [was] not just, or fair, or sensible;" nor is it sufficient to challenge "the 'correctness or desirability' of [the] reasons offered." *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), quoting *Pignato v. American Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994) and *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992). The plaintiff must identify evidence from which a reasonable jury could find that the employer's stated reasons were "phony." *Id.*, quoting *Pignato*, 14 F.3d at 349. And "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495.

Here, defendant has offered legitimate, non-discriminatory reasons for its decision to terminate plaintiff.[12] It asserts that plaintiff performed unacceptably in her position, and that she failed to achieve the requirements of her PIP when given the opportunity to improve. *See* Def.'s Mem. at 11.

The agency's reasons for terminating plaintiff are well-documented, and plaintiff's performance deficiencies were brought to her attention at least one year before she was terminated. *See* FY2013 Performance Appraisal; Notice of Unacceptable Performance (reiterating plaintiff's performance deficiencies and notifying her that she was being placed on a PIP); Notice of Proposed Removal (proposing plaintiff's removal from her position due to her failure to successfully complete her PIP); Decision to Remove (concluding that plaintiff's removal was warranted based on the reasons in Graham's removal letter). Defendant has supplied evidence to show that plaintiff was removed because her performance in two core competency critical elements and two personal commitment critical elements was unacceptable, and because she failed to show any improvement in those areas when given the chance. Decision to Remove at 2.

The agency offered several non-discriminatory reasons for giving plaintiff unacceptable ratings and terminating her, including: plaintiff "failed to satisfy the . . . substantive requirement that [she] provide weekly status reports of [her] work on the ECM Metrics Dashboard project using EPMLive"; she "failed to produce a SharePoint 2013 Business Intelligence capabilities report meeting the goals specified in the PIP" because the one she submitted was "prepared by copying materials from the Internet" and "[s]uch plagiary without attribution is unacceptable"; she did not "produce *any* report assessing the WebTrends product," and did "no work in connection with [her]

---

12    Defendant concedes that a termination qualifies as an adverse action under Title VII and the ADEA. *See* Def.'s Mem. at 11.

assignment to develop the ECM Metric Dashboard and to promote [her] code through the ECM life cycle," as she was required to do; plaintiff's alleged "unfamiliarity" with or inaccessibility to certain software was "incredible" and unjustifiable given her level of experience, the resources available to her, and the fact that no expertise was required to complete any of the assigned tasks; and finally, she did not take any action on certain projects until mid-November, almost two months into the PIP period, and some action she did take, such as "request[] that the [Virtual Machine] be set up on [her] laptop . . [was] a clear violation of Treasury security policy." Decision to Remove at 3–7 (emphasis in original).

This proffered explanation shifts the burden back to plaintiff to demonstrate, based on all of the evidence in the record, that the agency's asserted reasons were not the actual reasons for the adverse action, and that defendant intentionally discriminated against her on the basis of her race, national origin, and/or age. *See Brady*, 520 F.3d at 494. "All of the evidence" includes any combination of "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff." *Vickers*, 493 F.3d at 195, quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998).

Plaintiff has not come forward with any evidence to show that the agency was acting out of discrimination based on her race, national origin, or age. To the extent that plaintiff's discrimination claims are premised on the contention that she was treated differently from other similarly situated employees, plaintiff has put forth no evidence on that issue. "A plaintiff can establish pretext masking a discriminatory motive by presenting 'evidence suggesting that the employer treated other employees of a different [protected class] . . . more favorably in the same factual circumstances.'" *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015),

quoting *Brady*, 520 F.3d at 495. "To prove that he is similarly situated to another employee, a plaintiff 'must demonstrate that [he] and the allegedly similarly situated . . . employee were charged with offenses of comparable seriousness.'" *Id.*, quoting *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999).

In her opposition, plaintiff makes the conclusory assertion that her "comparators are Sean Fox (white/Caucasian), Bill Marcinko (white/Caucasian), and Camille Smith (black/African American), all of whom are in their 30s and native English speakers." Pl.'s Opp. at 25. While these three people were project managers in the same department as plaintiff, plaintiff does not provide evidence that any of the three committed any "offenses" at all, or that they were then treated differently than she was afterwards. The single relevant sentence devoted to whether her "comparators" were disciplined and removed merely asserts, with no factual support, that "[t]he [a]gency did not put the other PMs, who are younger, not Asian, and not Chinese, on PIPs and then remove them." *Id.* at 30. But plaintiff has not provided the Court with any evidence to support the contention that the other project managers were under-performing employees deserving of discipline in the first place. Therefore, plaintiff has failed to produce any evidence to show that other employees committed offenses that were similar to those for which she was sanctioned, and that she was subsequently treated more harshly than they were.

Plaintiff's attempt to oppose defendant's motion for summary judgment with regard to her disparate treatment claims falls short in other important ways as well.

Notably, plaintiff's entire opposition is based on the premise that she can make out a prima facie case of discrimination. *See* Pl.'s Opp. at 24–30. However, the D.C. Circuit has expressly stated that whether a plaintiff can establish a prima facie case is irrelevant at this stage of the

proceedings.[13] *See Brady*, 520 F.3d at 493–94. What matters is if plaintiff has submitted evidence to rebut defendant's legitimate reasons for firing her. And other than her failed attempt to identify comparators, she has come forward with nothing else.

Next, plaintiff fails to address the central adverse action in this case – her termination – in her opposition brief, even though it is the only allegedly discriminatory adverse action identified in the complaint. *See* Compl. ¶ 85 ("Defendant terminated [p]laintiff's employment because of [p]laintiff's national origin."); *id.* ¶ 93 ("Defendant terminated [p]laintiff's employment because of [p]laintiff's race."); *id.* ¶ 105 ("Defendant terminated [p]laintiff's employment because of [p]laintiff's age.").

Instead, plaintiff's opposition catalogues other alleged adverse events. Pl.'s Opp. at 25–30. For example, plaintiff argues that the agency took adverse actions against her when it excluded her from meetings, denied her requests for training and telework, and made her sit on a different floor from the rest of her team. *Id.* at 25. While these circumstances were mentioned in the general background section of the complaint, *see* Compl. ¶¶ 25–31, plaintiff did not include them in her disparate treatment counts. More importantly, plaintiff does not allege in the complaint that defendant took any of these actions because of her race, national origin, or age.

A plaintiff cannot amend her complaint through her opposition. *Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014) ("It is a well-established principle of law in this Circuit that a plaintiff may not amend her complaint by making new allegations in her opposition brief."), citing *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173–74 (D.C. Cir. 1994) (affirming district court's grant

---

13     But one more reason why no reasonable juror could find evidence of discrimination based on age is that plaintiff likely could not even make out a prima facie case under the ADEA. She did not provide any evidence, let alone even allege in her complaint, that she was replaced with someone younger than her after she was fired. *See Paquin*, 119 F.3d at 26–27. Therefore, no reasonable juror could infer age discrimination on this set of facts.

of summary judgment in favor of the defendant where the plaintiff failed to plead a cause of action and raised the issue for the first time in his opposition); *see also Webster v. Spencer*, 318 F. Supp. 3d 313, 319 (D.D.C. 2018) (observing that the complaint did not include an ADEA claim and it could not be amended to include one through the plaintiff's opposition brief).  And, even if she could, plaintiff has not alleged the facts necessary to determine that these events qualify as "adverse actions"; she has not alleged or shown that they resulted in a significant change in her employment status or caused her tangible harm.  *See Douglas v. Donovan*, 559 F.3d 549, 552–53 (D.C. Cir. 2009) (recognizing that typical adverse actions such as terminations require showing a change in employment status, while other less obvious adverse actions, such as giving a poor

performance evaluation or reassigning office space and equipment, require showing that the decision "caused an objectively tangible harm" to the plaintiff).[14]

In this case, all of plaintiff's discrimination claims fail because she has not pointed to any evidence to show that defendant's justification for firing her – unacceptable performance in multiple critical position elements – was a mere pretext for discrimination. Because no reasonable jury could conclude that her termination was tainted by any sort of discriminatory animus, the Court will grant summary judgment in favor of the agency on Counts 1, 3, and 6.

---

[14] Moreover, to the extent that plaintiff now wants to allege that there were additional discriminatory adverse actions, it is unclear if plaintiff has exhausted these claims. Plaintiff filed her formal complaint with the EEO on October 21, 2014. In it, she reiterated all of the factual circumstances, but claimed that the agency discriminated against her based on her race, national origin, and age by placing her on a PIP. Formal EEO Compl. ¶ 13.

Further, EEOC regulations require a federal employee to "contact" a counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The D.C. Circuit has treated this requirement as a statute of limitations, and a court may not consider a discrimination claim that has not been exhausted in this manner. *See Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008). The Supreme Court has held that "[e]ach discrete discriminatory act . . . starts a new clock for filing charges alleging that act," and that "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 113–14 (noting that the plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period"). But the complaint does not allege when all of these events occurred. For example, plaintiff does not provide a date on which her telework or training requests were denied, or the date on which she was placed on a different floor from the rest of the team. *See* Formal EEO Compl. ¶¶ 13(b), (e)–(g); Compl. ¶¶ 29–31. She does allege that she was excluded from a meeting in April 2014, *see* Formal EEO Compl. ¶ 13(c); Compl. ¶ 26, but this event occurred more than forty-five days before she filed her Formal EEO Complaint and is therefore time barred.

Finally, a federal employee may exhaust her remedies by asserting her employment claims before the MSPB. *See Butler*, 164 F.3d at 638 n.6. Here, when plaintiff brought her mixed case appeal to the MSPB, she only alleged that her "removal from service" was the "product of unlawful discrimination on the basis of age, race, and national origin." MSPB Appeal at 6. Because plaintiff never alleged that any of defendant's other conduct was motivated by discriminatory animus, she did not exhaust any additional claims through the MSPB appeal.

**II.      The Court will also grant summary judgment in favor of defendant on plaintiff's retaliation claims under Title VII and the ADEA.**

Plaintiff alleges that defendant fired her in retaliation for engaging in protected activity under Title VII and the ADEA.  Compl. ¶¶ 101, 113.

"Both Title VII and the ADEA prohibit the federal government from retaliating against employees who complain of employment discrimination." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009), citing *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (Title VII); *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (ADEA).  Retaliation claims brought under either statute, if based on circumstantial evidence as plaintiff's claims are here, trigger the burden-shifting framework announced in *McDonnell Douglas. Id.*; *see also McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984) ("The *McDonnell Douglas* framework is also applicable to claims of retaliatory dismissal.").  Under that framework, a plaintiff must establish a prima facie case of retaliation by showing that she engaged in protected activity, that she was subjected to an adverse action by her employer, and that there is a causal link between the protected activity and the adverse employment action.  *Jones*, 557 F.3d at 677.  If the plaintiff establishes a prima facie case, the employer must produce a legitimate and non-retaliatory reason for its actions.  *Id.*  And if the employer does so, "'the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence,' which includes not only the prima facie case but also the evidence the plaintiff offers to 'attack the employer's proffered explanation for its action' and other evidence of retaliation."  *Id.*, quoting *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).

Since defendant has proffered a legitimate, non-retaliatory reason for terminating plaintiff – that is, plaintiff's poor work performance – the Court must evaluate whether plaintiff has provided sufficient evidence to enable a reasonable jury to find that the employer's stated

reasons were not the actual reasons for the adverse action, and that the desire to retaliate was the but-for cause of the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 360 (2013) (holding that a plaintiff must establish that "the desire to retaliate was the but-for cause of the challenged employment action," that is, "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); *see also Jones*, 557 F.3d at 677–79 ("At that stage, the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation.").

Plaintiff advances three arguments in an attempt to rebut defendant's legitimate reasons for firing her: (1) the "close temporal proximity . . . between [her] protected activity and her removal" establishes a causal connection and gives rise to an inference of retaliation; (2) "management's inconsistent testimony" demonstrates an effort to mask retaliation; and (3) the agency's "departure from its regular practices" is evidence of pretext. Pl.'s Opp. at 32–34. None of these creates a question of fact for the jury, though, so defendant's motion for summary judgment will be granted on these counts as well.

## A.    Temporal Proximity

In the absence of direct evidence, the Court may infer a causal connection between the protected activity and the adverse employment action on a showing that "the employer had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity." *Jones*, 557 F.3d at 679 (recognizing that this evidence tends to support circumstantial evidence of retaliation at the prima facie stage, and that it "applies to the ultimate inquiry as well"), citing *Holcomb*, 433 F.3d at 903. While courts have not definitively established the exact time lapse between these two events, it is well established that the temporal proximity between the two must be "very close" to show a causal connection. *Clark Cnty. Sch. Dist. v.*

*Breeden*, 532 U.S. 268, 273–74 (2001); *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) (observing that the Supreme Court and D.C. Circuit have suggested that "a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation," but that there is technically no "bright-line three-month rule").

Defendant admits that plaintiff "engaged in statutorily protected activity when she made an EEO complaint." Def.'s Mem. at 12. The agency refers to September 22, 2014, the date plaintiff first contacted the EEO counselor, and October 21, 2014,[15] the day she filed her formal complaint, but it does not expressly acknowledge that plaintiff amended her EEO complaint on February 2, 2015. As of that date, the agency characterized plaintiff's allegations as including her claims of disparate treatment based on age, race, and national origin, as well as her claims that she was subject to retaliation for filing her earlier complaints. *See* Letter of Acceptance. So, February 2, 2015 is another date the Court may consider. *See Jones*, at 557 F.3d at 680 ("[W]e have repeatedly held that an adverse action following closely on the heels of protected activity may in appropriate cases support an inference of retaliation even when occurring . . . after the initial filing of charges.").

There is evidence in the record that Graham, plaintiff's supervisor, and Susarla, the terminating official, knew about the EEO complaints. But the chronology in its entirety does not create an issue for the jury because plaintiff's supervisor started the ball rolling before plaintiff raised any concerns at all, and plaintiff was terminated well after the terminating official became aware of her protected activity.

---

15      Defendant cites the date as October 22, but the facts reveal that the complaint was made on October 21. *See* Def.'s Mem. at 12; Formal EEO Complaint (date in corner lists 10/21/2014).

On October 8, 2014, Graham emailed Susarla about the informal EEO complaint, *see* Pl.'s SOF ¶¶ 23–24; AR at 882; the formal EEO complaint was also filed in October; and on December 12, 2014, Graham submitted an affidavit to the EEO investigator in response to the formal EEO complaint. Pl.'s SOF ¶ 26; *see* Graham EEO Aff. Further, after plaintiff amended her EEO complaint in February of 2015, Graham supplied an updated affidavit to the EEO counselor on March 23, 2015. Pl.'s SOF ¶ 28; Graham Suppl. EEO Aff. Susarla provided one as well, but his is undated. Pl.'s SOF ¶ 28; Susarla EEO Aff. At approximately the same time, on March 23, 2015, Graham formally proposed to remove plaintiff. *See* Notice of Proposed Removal. And on June 29, 2015, Susarla made the decision to terminate plaintiff. *See* Decision to Remove.

In sum, the record shows that there were five months between the time plaintiff's immediate supervisor, Graham, first became aware of any EEO activity and when he proposed her termination, and that time period is too long to give rise to any inference of causation. *See Breeden*, 532 U.S. at 273–74 (citing with approval cases finding temporal proximity of three and four months to be insufficient to demonstrate a causal connection).

It is true that Graham responded to plaintiff's amended EEO complaint and proposed that she be terminated on the same day. The record does not reveal the precise sequence or identify the date that he began to prepare either document. But, even if the amended EEO complaint came second, one cannot look at that confluence of events in isolation. It is undisputed that Graham voiced his concerns about plaintiff's performance before plaintiff had made any complaints to the EEO counselors at all. Graham placed plaintiff on a PIP on August 27, 2014, and it was only after that evaluation that plaintiff first claimed she was being treated unfairly. The fact that Graham continued to be dissatisfied thereafter does not suffice to establish retaliation. *See Breeden*, 532 U.S. at 272 ("Employers need not suspend previously planned [adverse actions] upon discovering"

27

that an employee engaged in protected activity, "and their proceeding along lines previously contemplated, though not definitively determined, is no evidence whatever of causality"); *Terveer v. Billington*, 34 F. Supp. 3d 100, 119 (D.D.C. 2014) (applying this principle where the plaintiff received a written warning that a negative report following a ninety-day review period would result in the denial of a grade increase; plaintiff made a complaint; and thereafter, the plaintiff was denied a grade increase).

As for Susarla, the terminating official, he first became aware of EEO activity in September or October of 2014, and that would be far too removed in time from June of the next year when he terminated plaintiff to support an inference of retaliation. *See Breeden*, 532 U.S. at 273–74. Plaintiff appears to be relying solely on the closeness in time between when Susarla learned about the *amended* EEO complaint and when he issued the termination decision, *see* Pl.'s Opp. at 38, but there is no evidence of when Susarla gained that knowledge. Plaintiff has not even pointed to any evidence in the record of when Susarla submitted his affidavit to the EEO investigator, which would indicate approximately when he had knowledge of plaintiff's amended complaint. Plaintiff simply assumes that Susarla submitted his affidavit "in or around the end of March 2015" because that is when Graham submitted his. *Id.*

But assumptions do not carry the day at the summary judgment stage. The time between the February 2, 2015 filing of the amended EEO complaint and plaintiff's June 29, 2015 termination is almost five months, and even if plaintiff could prove that Susarla learned about the amended EEO complaint in late March, there would still be a three-month period between the time he became aware and when he took steps to terminate plaintiff. This three-to-five-month gap in time is, at best, weak evidence of a causal connection, particularly when the supervisor had been aware of the initial protected activity long before that time.

Therefore, plaintiff relies on additional theories in an effort to establish an inference of retaliation in this case. "Employees may cast doubt on the employer's proffered reason by, among other things, pointing to 'changes and inconsistencies in the stated reasons for the adverse action [and] the employer's failure to follow established procedures or criteria . . . .'" *Evans v. Sebelius*, 716 F.3d 617, 620 (D.C. Cir. 2013), quoting *Brady*, 520 F.3d at 495 n.3. Plaintiff tries to do both, but she is unsuccessful.

### B.     Inconsistent Testimony

Plaintiff maintains that Graham and Susarla gave inconsistent testimony about her termination, and that this evidence is sufficient to establish that the stated reasons were a mere pretext to mask retaliation. Pl.'s Opp. at 34. But none of the cited testimony goes to the heart of the matter: whether the agency has given "shifting reasons" for her termination that could support a jury's conclusion that the agency's proffered reasons for termination here were false. *See Brady*, 520 F.3d at 495 n.3; *Evans*, 716 F.3d at 620.

Instead, plaintiff refers the Court to deposition testimony and argues that Graham and Susarla are not credible witnesses. Pl.'s Opp. at 34–37. For example, plaintiff contends that Graham lied in his deposition since he testified that he only discussed plaintiff's EEO complaint with Susarla and Vess, yet another employee testified in his deposition that Graham told him about the complaint. *Id.* at 34. She also maintains that Susarla provided "inconsistent or otherwise not credible testimony" because he was "unable to explain how the PIP assignments were tied to [plaintiff's] job duties," and that some of his interrogatory responses did not line up with what he allegedly knew after plaintiff had submitted affirmative defenses in response to her proposed termination. *Id.* at 36–37.

While a plaintiff can show pretext by demonstrating that the employer gave changing and inconsistent reasons for the adverse action, *see Brady*, 520 F.3d at 495 n.3; *Evans*, 716 F.3d at 620, plaintiff has not done so here. Whether Graham or Susarla have been contradicted about other minor matters or not, the alleged inconsistencies in the cited evidence have nothing to do with the reasons for plaintiff's termination.

## C.     Departing from Regular Agency Practices

Plaintiff also argues that the agency departed from its regular practices when it: placed her on a PIP while she was on a detail, and requested supplemental information from Graham about his recommendation to remove her, and that these two deviations give rise to an inference of retaliation. Pl.'s Opp. at 32.

To support her first argument, plaintiff offers one piece of evidence: a single sentence from the deposition of Russel D'Costa, the Employee and Labor Relations Specialist who oversaw plaintiff's removal. Pl.'s Opp. at 32–33, citing AR at 990–96, Dep. of Russel D'Costa ("D'Costa Dep.") at 13:13–15. After being asked if it is "a common practice at Treasury to put detailed employees on PIP's," D'Costa answered, "I've never seen that." D'Costa Dep. at 13:13–15. However, plaintiff fails to mention that right before D'Costa made that comment, he testified that he did not "think there's anything wrong with that" – meaning placing a detailed employee on a PIP. *Id.* at 13:5–8.

That D'Costa had "never seen" an employee placed on a PIP while on a detail does not establish that it was a departure from practice to do so, especially in light of his other comment that he did not believe there would be anything wrong with doing so. Therefore, this evidence does not tend to show pretext.

Turning to plaintiff's next argument, that it was not the agency's typical practice to allow proposing officials to provide supplemental information in support of an employee's proposed removal, she points to the deposition testimony of D'Costa and Susarla. However, the cited portions of the depositions reveal information that does not support plaintiff's position.

First, it is true that D'Costa testified that Graham provided supplemental information to the deciding official in order to answer questions that arose after plaintiff responded to the notice of proposed removal. *See* D'Costa Dep. at 8:20–9:16. But in response to the question of whether he had "ever required" clarification from the proposing official before, he responded with a resounding, "Yes. Yes," *id.* at 9:20–10:2, and he stated that he had done so "[p]robably less than half" of the times he had been involved in disciplinary actions. *Id.* at 10:3–5. Plaintiff points out that D'Costa "did not testify that it was the [a]gency's common practice" to obtain supplemental information from deciding officials. Pl.'s Opp. at 33. But that is not the same as providing evidence that requesting the information was a deviation from normal agency practice. The evidence indicates that requesting additional information was an option that deciding officials had exercised in the past, and it does not support plaintiff's theory that the agency departed from its regular practices here.

Plaintiff also points to Susarla's deposition testimony, in which he clearly could not remember how or why Graham provided any supplemental information to him. *See* AR 888–911, Dep. of Chakravarthy Susarla ("Susarla Dep.") at 32:9–35. Although he said he "may [have] asked [for] some information or something," he could not remember and suggested that the information may have been exchanged through someone in human resources such as D'Costa. *Id.* at 33:19–22; *id.* at 36:5–16. Nothing in Susarla's testimony sheds any light on whether it was the agency's regular practice to receive supplemental information from the proposing official.

While there is evidence to suggest that Graham did in fact provide supplemental information to the deciding official, plaintiff admits in her statement of facts that she was given the opportunity to respond to Graham's supplemental materials and did so.  Pl.'s SOF ¶ 52.  So even if requesting additional information from the deciding official was not the most prevalent agency practice, nothing about the manner in which the agency went about conducting itself here seems suspect.  Therefore, no reasonable juror could conclude based on this evidence that defendant's asserted reasons for terminating plaintiff were a mere pretext for retaliation.

Thus, at the end of the day, plaintiff's retaliation claims are based upon the weak temporal proximity between the amended EEO complaint and her termination.  This evidence is insufficient to show that retaliation was the "but for" cause of the alleged adverse action, *see Nassar*, 570 U.S. at 360, especially because the record indicates that the agency was simply continuing to pursue an action it initiated before plaintiff engaged in any protected activity.

Plaintiff's performance deficiencies were identified before she even made her first complaint to the agency in September 2014, *see* FY2013 Performance Appraisal; Notice of Unacceptable Performance, and the stated reasons for her termination were based on an accumulation of those inadequacies.  *See* Notice of Proposed Removal; Decision to Remove. Graham warned plaintiff that she was already underperforming when he met with her for her mid-year review in June 2014, and because her performance did not improve, he placed her on a PIP in August.  When Graham did so, plaintiff was told that if she did not successfully complete PIP, she could be terminated.   By the end of December, the agency had concluded – and informed plaintiff – that she failed the PIP, and this was over one month *before* plaintiff amended her EEO complaint – the only complaint that has any temporal proximity to the termination that occurred almost five months later.

While plaintiff did engage in protected activity between the time she failed the PIP and the date she was fired, the entire chain of events leading to plaintiff's termination reveals that the weak proximity of those events cannot prove but-for causality. Therefore, plaintiff has not come forward with sufficient evidence to enable a reasonable juror to find that her EEO activity was the impetus behind her termination, and the Court will grant defendant's motion for summary judgment on Counts 5 and 8.

## III. The Court will uphold the MSPB decision and grant summary judgment on Count 9.

In addition to her discrimination and retaliation claims under Title VII and the ADEA, plaintiff filed a separate claim before this Court challenging the MSPB's decision to uphold her removal. *See* Compl. ¶¶ 75–83, 116–19.

After plaintiff was fired, she brought a mixed case appeal before the MSPB. *See* MSPB Appeal. Plaintiff challenged her removal as procedurally improper, *id.* at 6, and one of the arguments she made before the Board was that she could not be removed for unacceptable performance while serving on a detail as opposed to her position of record. MSPB Decision at 10, (citation omitted). The Administrative Judge rejected this argument, and plaintiff now asks this Court to set aside that portion of the judge's decision and find her removal to have been unlawful under 5 U.S.C. § 4303.[16] *See* Compl. ¶¶ 76–77, 82, 117. According to plaintiff's complaint, the

---

16      Plaintiff does not allege in her complaint that any other portion of the MSPB decision was wrongly decided. *See generally* Compl. But in her opposition, plaintiff argues more broadly that the agency denied her a reasonable opportunity to demonstrate acceptable performance under all of the critical elements in her performance plan and that the Administrative Judge's conclusion to the contrary should be set aside. Pl.'s Opp. at 16. Because defendant did not move for summary judgment on these grounds, and it is not at all clear to the Court that plaintiff alleged any facts or causes of action related to this theory in her complaint, *see* Compl. ¶¶ 75–83, 116–19 (alleging facts related to her allegedly unlawful removal "based on performance during her detail," but not challenging the judge's decision in any other way), the Court will not take up these issues at this time.

judge's "decision was wrong because [p]laintiff's duties in her [Departmental Offices] performance plan were completely different from the duties she performed on her detail to ECM." *Id.* ¶ 82.

When considering non-discrimination claims on appeal from the MSPB's determination, "the district court may set aside the administrative adjudication only if it is arbitrary or capricious, obtained without compliance with lawful procedures, unsupported by substantial evidence or otherwise not in accordance with law." *Barnes v. Small*, 840 F.2d 972, 979 (D.C. Cir. 1988); *see also* 5 U.S.C. § 7703(c). "To show that the MSPB's decision is not arbitrary and capricious, defendant needs only to show that the decision has a 'rational basis in the law.'" *Hanna v. Herman*, 121 F. Supp. 2d 113, 121 (D.D.C. 2000), quoting *Wilder v. Prokop*, 846 F.2d 613, 620 (10th Cir. 1998). Further, in assessing whether the MSPB's ruling was supported by substantial evidence, a court is not supposed to "re-weigh conflicting evidence," and "agency conclusion[s] may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Rountree v. Johanns*, 382 F. Supp. 2d 19, 32 (D.D.C. 2005), quoting *Robinson v. NTSB*, 28 F.3d 210, 215 (D.C. Cir. 1994). Ultimately, a court's role in this area is limited, and it reviews the Board's decision deferentially. *Fogg*, 254 F.3d at 112. Having examined the Administrative Judge's decision, the Court concludes that it was based on substantial evidence in the record, and that it was not arbitrary, capricious, or contrary or law.

The first issue the judge resolved was whether plaintiff's position on the detail was different from her position of record. MSPB Decision at 10–11. She reviewed plaintiff's FY2013 and FY2014 performance plans and job description and concluded that plaintiff "continued to work under the same position description and the same core critical elements," and that "her duties and responsibilities did not change." *Id.* The judge credited the representations made in affidavits,

and she found that any differences between plaintiff's performance plans and job duties "were not unique to her but applied to all IT specialists on the ECM team and were due to changes in technology and software applications that affected the nature of the work they do." *Id.* at 11; *see also id.* at 17 (crediting Graham's affidavit that stated that plaintiff's "duties with the ECM team remained substantially the same as those she performed on the DO Apps team"). Further, she found that plaintiff's PIP was based on the critical elements of her FY2014 performance plan after reviewing both the language in it that directly quotes from the plan's critical elements and the statements in Graham's affidavit regarding his involvement in creating the PIP in conjunction with human resources. *Id.*

Ultimately, based on this evidence, the judge concluded that plaintiff's FY2014 performance plan was the performance plan of her official position of record since any changes between her 2013 and 2014 plan would have merely reflected "changes in the agency's IT environment" "regardless of whether she had been detailed from the DO Apps team to the ECM team," and because her PIP was based on the standards set forth in her FY2014 performance plan. MSPB Decision at 11, 17. Plaintiff has not identified any pertinent evidence that the Board failed to consider, nor has she even attempted to show that the judge could not fairly and reasonably have found the facts as she did. Therefore, the Court concludes that the judge's findings were not arbitrary or capricious or unsupported by substantial evidence.

Next, the judge addressed plaintiff's argument that "agencies may not remove an employee for unsatisfactory performance in a detail." MSPB Decision at 16 (citations omitted). She concluded that the cases plaintiff cited were not only distinguishable, but they explicitly left open the possibility for removal based on unacceptable performance on a detail. *See id.*, citing *Betters v. Fed. Emergency Mgmt. Agency*, 57 M.S.P.R. 405, 409 n.4 (1993) ("This is not to say, however,

that poor performance during a detail can never be used (at least in part) as the basis of a Chapter 43 action."). The judge also noted that while there may be a "general prohibition against an agency's taking such actions against an employee who is on detail," that prohibition applies when an employee is detailed "to a position different from her official position of record and not given the chance to improve under the performance plan used in her official position of record." *Id.*, citing *Betters*, 57 M.S.P.R. at 408–09.

In analyzing the case law in the context of the facts of this case, the Administrative Judge again reviewed the performance appraisals and took note of the fact that plaintiff "was charged with unacceptable performance in four critical elements, two of which were . . . common among all agency employees, and thus unchanged from her FY 2013 performance plan." MSPB Decision at 16–17. She continued: "That is to say . . . the [plaintiff's] performance standards and elements for critical elements #1 and #4 were unchanged from the time before the detail to the time after the detail, and she was removed, in part, for unacceptable performance in those elements." *Id.* at 17. The judge also relied on her factual finding that plaintiff's performance plan was in fact the performance plan of her position of record. *See id.* Thus, the judge concluded that because plaintiff's PIP was based on the performance plan of her position of record, she was given a chance to improve under those standards, and the removal was appropriate even if she was on a detail. *Id.*

Plaintiff argues that the judge failed to comply with controlling case law, and she maintains that the MSPB's decision in *Betters v. Federal Emergency Management Agency*, 57 M.S.P.R. 405 (1993) should have controlled the judge's ruling. Pl.'s Opp. at 15. Plaintiff relies heavily on that case to support her position that she could not be removed while on detail. *Id.* But her analysis does not establish reversible error in the judge's decision. *See Brown v. Vilsack*, 923 F. Supp. 2d

118, 124 (D.D.C. 2013) (noting that it is plaintiff's obligation to establish reversible error in the MSPB's decision).

In *Betters*, the agency removed the employee from his position as a computer systems analyst based on a showing that his performance of three critical elements was unacceptable under his performance plan. 57 M.S.P.R. at 407. Prior to placing the employee on a PIP, the agency had detailed him to a position with different performance standards from his position of record. *Id.* at 408. And, when he began the PIP, the employee was given new performance standards yet again, and he was ultimately terminated under those standards. *Id.* The administrative judge reversed the removal action, agreeing with the employee that the agency had failed to provide him with a reasonable opportunity to demonstrate acceptable performance since he was presented with new performance standards on a detail, and a revised performance plan when he was placed on a PIP, and both were "substantially different from his prior standards." *Id.* The agency then petitioned the Board for review of that decision. *Id.* at 408.

The Board confirmed that "[a]n examination of the [employee's] performance plan prior to being placed on the detail . . . shows that it differs substantially from the performance plan he received when he was placed on the detail." *Betters*, 57 M.S.P.R. at 409. Further, the plan the agency gave to the employee when he was placed on the PIP also "differed significantly from that for the [employee's] official position of record." *Id.* at 410. Because an employee "is deprived of a meaningful opportunity to improve where the agency has not informed him that his performance in his official position of record was unsatisfactory and given him an opportunity to improve under the standards of that position," and because an agency "may not use a PIP either to reduce or increase the standards of performance established at the beginning of the appraisal period," the Board found no error in the administrative judge's decision to overturn the employee's

removal.  *Id.*  The agency had violated both principles.  *See id.* ("By changing the [employee's] performance plan first by detail and then pursuant to the PIP, the agency did not allow the [employee] a reasonable opportunity to demonstrate acceptable performance under the performance plan in which the agency alleged the [employee's] performance was unacceptable.").

Thus, the *Betters* opinion does not stand for the broad proposition that an employee on a detail can never be removed for unacceptable performance.  As the Administrative Judge noted, the Board stated in its opinion in that case that "[t]his is not to say, however, that poor performance during a detail can never be used (at least in part) as the basis of a Chapter 43 action."  *Betters*, 57 M.S.P.R. at 409 n.4; *see* MSPB Decision at 16.

Further, "the propriety of a charge of unacceptable performance is judged not based on a position description but rather on the employee's performance plan and the elements and standards derived under it."  *Betters*, 57 M.S.P.R. at 409; *see also* MSPB Decision at 11.  The Court has already concluded that the judge's factual determination that plaintiff's FY2014 performance plan was the same as the performance plan of her position of record was supported by substantial evidence.  Because plaintiff's PIP was based on the standards announced in that plan, the judge properly distinguished the facts of this case from *Betters*.  The judge's ultimate conclusion that plaintiff was given a reasonable opportunity to demonstrate acceptable performance in her position of record, despite being placed on a detail, follows logically from her application of the facts to

the law.  Therefore, the Court does not find the decision to be arbitrary and capricious or contrary to law.[17]

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment will be granted on all counts.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 24, 2018

---

17    The only other cases mentioned by the administrative judge, and cited to by plaintiff, were *Smith v. Department of Navy*, 30 M.S.P.R. 253 (1986) and *Cortes v. Department of Interior*, 26 M.S.P.R. 88 (1985).  *See* MSPB Decision at 16; *see also* Pl.'s Opp. at 15 (citing to the same two cases).  In both of those cases, the Board reversed the employee's removal decision because the employee was not given an opportunity to demonstrate acceptable performance since the employee received "unacceptable" ratings while on a detail with different performance standards and job duties from his position of record.  *See Smith*, 30 M.S.P.R. at 255; *Cortes*, 26 M.S.P.R. at 89–90. These cases are distinguishable for the same reasons as *Betters*, and therefore, the Court concludes that the Administrative Judge's decision was not arbitrary and capricious or contrary to law.